THOMAS F. CARLUCCI
JAIME DORENBAUM
FOLEY & LARDNER LLP
555 California Street, 17th Floor
San Francisco, CA 94104
Telephone: (415) 434-4484

DENNIS P. RIORDAN
DONALD M. HORGAN
THEODORE SAMPSELL-JONES
RIORDAN & HORGAN
523 Octavia Street
San Francisco, CA 94102
Telephone: (415) 431-3472

Attorneys for Defendant JING ZENG

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 4:16-CR-00172 |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Date: November 9, 2016<br>Time: 10:30 a.m.<br>Courtroom: Honorable James Donato |
| JING ZENG, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

**DEFENDANT'S REPLY TO GOVERNMENT'S
OPPOSITION TO DEFENDANT'S MOTION TO
DISMISS THE AMENDED INFORMATION**

**TABLE OF CONTENTS**

A.    Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.    Legal Standard under Rule 12. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    Pleading Judicially-Recognized Elements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    2.    Factual Allegations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

C.    The Felony Damage Count. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    1.    Damage. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    2.    Transmission. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

D.    The Misdeameanor Unauthorized Access Counts. . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

E.    Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

1

2

## TABLE OF AUTHORITIES

## CASES

*Apprendi v. New Jersey,*
530 U.S. 466 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Carver v. Lehman,*
558 F.3d 869 (9th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Facebook, Inc. v. Power Ventures, Inc.,*
  – F.3d –, 2016 WL 3741956 (9th Cir. July 12, 2016). . . . . . . . . . . . . . . . . . . . . . . . . 1, 7, 8

*International Airport Centers, LLC v. Citrin,*
440 F.3d 418 (7th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Neder v. United States,*
527 U.S. 1 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Sanders v. Brown,*
504 F.3d 903 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States v. Blinder,*
10 F.3d 1468 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Boren,*
278 F.3d 911 (9th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*United States v. Cassel,*
408 F.3d 622 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Johnson,*
256 F.3d 895 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Omer,*
395 F.3d 1087 (9th Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATUTES

18 U.S.C. § 1030(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1030(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 1341.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. § 1344(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**A.     Introduction**

What is perhaps most remarkable, and most disturbing, about the government's opposition is its willingness to contradict its own legal positions in other cases.  The most egregious example concerns the misdemeanor unauthorized access counts.  As Mr. Zeng's motion showed, the Information does not allege that the third parties in China who accessed Machine Zone computers knew that they lacked authorization.  The government concedes the factual point, but it argues that knowledge is not an element of the offense.  The government says that the only mens rea requirement is the intent to access, and that there is no additional knowledge requirement.  "'Knowingly' is not necessary in these kinds of cases." (Govt. Opp. at 17.) And yet the government, indeed this same United States Attorney's office, took exactly the opposite position less than a month ago in its opposition to en banc rehearing in *Nosal II*.  There, it argued that although the word "knowingly" does not appear in the text of the statute, it is nonetheless an implicit limiting principle that guards against overbreadth.  It recognized that the Ninth Circuit had so held in *Facebook, Inc. v. Power Ventures, Inc.*, -- F.3d --, 2016 WL 3741956 (9th Cir. July 12, 2016).

> In addition, the CFAA's "without authorization" offenses require proof that a person accessed a computer "knowing that [she] was not authorized to do so." *Facebook*, 828 F.3d at 1075 (addressing "without authorization" in the context of 18 U.S.C. § 1030(a)(2)(C)).  This mens rea requirement limits the discretion of law enforcement and ensures that the CFAA does not criminalize the kind of unwitting conduct this Court was concerned about in *Nosal I*.

(*See* Exhibit A attached to this Reply Memorandum, the Government's Opposition to En Banc Petition filed on October 11, 2016 in *United States v. Nosal,* at 14-15 .)

It is troubling that the U.S. Attorney's Office is willing to say one thing in one case, and then turn around only a few weeks later and say the exact opposite in another case.  But the contradiction illustrates a larger point about the CFAA.  It is precisely the lack of clarity in the CFAA that allows the government to shift theories from case to case.  And it is precisely in such circumstances that courts must construe criminal statutes narrowly in order to avoid criminal liability based on endlessly malleable legal theories.

1

**B.     Legal Standard under Rule 12**

The government claims that Mr. Zeng ignores the legal standards governing motions to dismiss criminal charges: i.e., a charging document must allege every fact and element necessary for conviction, and motions to dismiss must be decided based solely on the facts alleged in the charging documents.   Yet it is the government that breaches those rules in its Opposition.

### *1.     Pleading Judicially-Recognized Elements*

The parties agree that an information must "adequately allege[] the elements of the offense."  (Govt. Opp. at 1 (quoting *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993).)  But the government argues that when an information tracks the language of the statute, it automatically states the elements of the offense.  It argues in other words that an information need not include additional elements that are required by case law.  According to the government, an information is "sufficient without including all judicial interpretations of the words used in the statute."  (Govt. Opp. at 17.)

That is not accurate.  For example, the word "materiality" appears nowhere in the mail fraud statute, 18 U.S.C. § 1341.  In *Neder v. United States*, 527 U.S. 1 (1999), the Supreme Court held that materiality is nonetheless an element of the offense of mail fraud.  It is now established beyond peradventure that the element of materiality must be alleged in every mail fraud indictment.  *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005) ("[P]ursuant to *Neder*, materiality of the scheme is an essential element of bank fraud in violation of 18 U.S.C. § 1344(1). As such, materiality must be alleged in the indictment.")  The government's claim that judicially-recognized elements need not be pleaded is without merit.

Of course it is true that a charging document need not allege every "judicial gloss" on the meaning of a federal criminal statute.  But when judicial opinions interpret a statute as requiring elements of the offense, those elements must be alleged, regardless of whether they appear in the plain text of the statute.  That is precisely what has happened with the CFAA.  In part to save the statute from constitutional vagueness concerns, courts have limited the statute.  They have interpreted the statute as requiring proof of certain facts.  Guilt or innocence depends on those facts.  They are essential elements of the offense, and they must be alleged.  *See Apprendi v. New*

2

1  *Jersey*, 530 U.S. 466, 476 (2000) (stating that any fact necessary for conviction must be charged

2  in the indictment, submitted to the jury, and proven beyond a reasonable doubt).

3  Throughout its opposition, the government suggests that this Court should simply ignore

4  the case law that has limited the CFAA.  This Court should not do so.

5  If a mens rea of knowledge is an essential element of the offense, for example, then that element

6  must be pleaded.  That is exactly what *Apprendi* and its progeny require.

7  ### 2.    *Factual Allegations*

8  The government also appears to dispute what facts this Court should consider and what

9  inferences it should make.

10  The government is of course correct that, when ruling on a motion to dismiss under Rule

11  12(b)(3), a court must accept the allegations in the information as true.  The flip side of the same

12  coin is that while all allegations must be taken as true, a motion to dismiss must be decided

13  solely on the allegations in the information.  "In ruling on a pre-trial motion to dismiss an

14  indictment for failure to state an offense, a district court is bound by the four corners of the

15  indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  A court cannot consider

16  facts that are "not appearing on the face of the indictment."  *Id*.

17  And yet in its opposition, the government repeatedly relies on facts that are not alleged.

18  Indeed, it captions a key section of its Opposition "Factual Background," thereby taking the

19  position that facts other than those alleged in the Information are relevant to consideration of a

20  facial challenge to that pleading.  It then asserts that

21  The evidence will show that in July 2015, Zeng twice
22  surreptitiously accessed a confidential company database called
     Tableau from his company laptop while not at work, and accessed
23  files that contained valuable, non-public information regarding the
     way customers use and interact with the Machine Zone game.

24  (Govt. Opp. at 2)

25  The very phrase "the evidence will show" establishes the government's intention to

26  violate the procedural limitations which govern  a motion to dismiss a charging document for

27  failure to state an offense, which bar both parties from referring to facts or "evidence" outside

28  the four corners of the document. And indeed the remainder of the sentence beginning with that

3

1   phrase, quoted above, contains factual assertions wholly absent from the Information.  (*Id.*)  The

2   paragraph containing the uncharged language ends with the sentence: "This conduct forms the

3   basis for the computer damage charge alleged in Count One."   Thus the conduct on which the

4   government now contends Count One necessarily rests was not fully alleged in the Information,

5   rendering the Count One allegations legally insufficient.

6        Likewise, the next paragraph in the government's Opposition contends that "[t]he FBI

7   discovered Machine Zone trade secrets defendant should not have had in defendant's home

8   during a search." (*Id.*)  This allegation is nowhere in the Information, which does not even use

9   the words "trade secrets," much less allege a theft of trade secrets, no doubt for good reason.

10   This Court cannot rely on unpled representations to skew its proper consideration of defendant's

11   motion.

12        The government also suggests at various points that this Court should "infer" facts that

13   are not explicitly pleaded.  It is true that a Court can draw inferences when ruling on a motion to

14   dismiss, but those inferences must be reasonable.  *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir.

15   2007).  Conjecture and speculation about what the government might or might not be able to

16   prove cannot defeat a motion to dismiss.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

17   (2007).  Rather, the charging document itself must state sufficient facts to state an offense.

18   Mr. Zeng's motion demonstrates that the allegations in the Information fail to allege several

19   essential elements of the offense.  Thus, even accepting all of the allegations as true, the

20   Information fails to state a crime under the CFAA.

21       **C.**     **The Felony Damage Count**

22        In reality, there is and can be no dispute about what is and is not alleged.  At bottom, the

23   dispute between the parties here is about what is legally required to plead and prove a crime

24   under the CFAA.  With respect to the felony damage count, the government focuses most of its

25   argument on the fact that Mr. Zeng did not have permission from Machine Zone to make any

26   changes to his laptop.  (Govt. Opp. at 7-9.)  These arguments are nonresponsive to Mr. Zeng's

27   core arguments on the felony count: that the government alleged neither *damage* nor

28   *transmission*.

4

1          *1.     **Damage***

2          Numerous cases have held that under the CFAA, the term "damage" must be limited to

3  situations where some data or system is permanently deleted.  As the Seventh Circuit squarely

4  held, proving damage requires a showing that the information was not "easily recoverable" and

5  the "company had no duplicates" of those files. *See Int'l Airport Centers, LLC v. Citrin*, 440

6  F.3d 418, 419, 421 (7th Cir. 2006).  The government does not discuss *Citrin's* definition of

7  damage.  It distinguishes on the facts other cases requiring permanent deletion.  (Govt. Opp. at

8  10.)  It argues that no showing of permanent deletion, much less permanent deletion of

9  information that is not backed up and easily recoverable, is legally required.  In short, the

10  government asks this Court to ignore *Citrin* and all the other cases requiring permanent deletion.

11  Mr. Zeng submits that while those cases are not binding in this Circuit, they are nonetheless

12  correct.

13          As a fallback, the government argues that even if permanent deletion is required, that it is

14  a "fair inference" from the information that there was some information on Mr. Zeng's laptop

15  that was not available elsewhere.  (Govt. Opp. at 10-11.)   For example, at one point, the

16  government asserts that "all of the data files" on Mr. Zeng's laptop were "lost permanently"

17  when Mr. Zeng reformatted the laptop's hard drive.  (Govt. Opp. at 11.)  Here again the

18  government is relying on facts that are not alleged in the Information.  There is no basis for such

19  an inference based on the facts alleged in the Information. Moreover, even if it is true that all of

20  the data files were deleted, such deletion does not constitute "damage" if the same files were

21  recoverable. The Information merely alleges that Mr. Zeng "erased the contents" of his laptap

22  and thereby removed "certain items that had initially been installed by the company."  (Para. 7.)

23  It says absolutely nothing about what those items were.  If they were merely Mr. Zeng's family

24  photos, for example, then their deletion damaged nothing.  If they were copies of programs such

25  as Microsoft Word, then they obviously could have been easily replaced.  If they were company

26  data, then their deletion *might* have harmed Machine Zone—but only if they were not backed up

27  and not easily recoverable.  Nothing at all inculpatory can be inferred from the allegations in the

28  Information. Indeed, since the items were alleged to have " been initially installed by the

5

company," the only reasonable inference from that allegation is that the company still possesses the items and can replace them.

The Information fails to state facts that show damage under the CFAA, and it fails to make any allegation that anything deleted was not recoverable.  The government suggests that this Court can simply assume that something like that was deleted.  This Court should not do so.  Reasonable and common sense inferences are allowed under Rule 12(b)(3).  Guesswork is not.

### 2.    *Transmission*

The crime defined under the CFAA requires not only the forbidden result of damage, but also a forbidden means of accomplishing that damage—namely, transmission.  As Mr. Zeng demonstrated in his motion to dismiss, courts have held that transmission requires accomplishing damage by means of an external transfer of some code or virus to the protected computer. *Citrin*, 430 F.3d at 419-20.

To the extent that the government responds to this argument, it appears to suggest that Mr. Zeng did transmit external files when he "loaded new software onto his computer."  (Govt. Opp. at 12.)  This makes no sense.  The information alleges that Mr. Zeng first deleted the operating system on his laptop, and then reloaded another operating system.[1]  Even if the former action constituted "damage," the former action was not accomplished by the latter action.

Simply put, the CFAA requires that some external transmission of code or virus *cause* the permanent and irretrievable loss of information.  The plain text of the statute states that the relevant damage must occur "as a a result of such conduct"—i.e., the transmission.  18 U.S.C. § 1030(a)(5).  Even assuming arguendo that the Information sufficiently alleges that Mr. Zeng caused a permanent and irretrievable loss of information, it does not allege that he did so by any external transmission.  Rather, it appears to allege that he used the computer's own internal code to delete the operating system, and he then subsequently re-installed another operating system**.**

---

[1] It is notable that the Information states nothing at all about the difference between the operating systems.  For example, if an employee uninstalled Windows 7 on her laptop and replaced it with Windows 10, that would hardly constitute "damage" under the CFAA.

1

### D.   The Misdeameanor Unauthorized Access Counts

2    The misdemeanor counts depend primarily on the meaning of the term "without

3  authorization."  That term is defined by the case law, and obviously, the case law remains in

4  flux.

5    As an initial matter, the government argues that the Ninth Circuit's recent rulings in

6  *Nosal II* and *Facebook* are already settled law, even though en banc proceedings are pending.

7  The government argues that appellate opinions are final and binding "when it is issued."  (Govt.

8  Opp. at 4.)  That is simply wrong as a matter of appellate procedure.  "No opinion of this circuit

9  becomes final until the mandate issues[.]" *Carver v. Lehman*, 558 F.3d 869, 878 (9th Cir. 2009);

10  *see* Fed R. App. P. 41(c), 1998 Adv. Comm. Note ("A court of appeals' judgment or order is not

11  final until issuance of the mandate[.]").[2]

12    But even setting aside that fairly technical dispute, the more notable fact is that the

13  government refuses to accept the limitations contained in *Nosal II* and *Facebook*.  After initially

14  arguing that those opinions are final and binding, it then writes off key portions as dicta.

15    First, those opinions state that revocation of access is a critical fact upon which liability

16  depends.  In fact, in *Facebook*, revocation was the key fact upon which liability turned.  The

17  defendants in *Power Ventures* were outsiders who had not received permission from Facebook to

18  access Facebook servers.  The Ninth Circuit nonetheless held that when they initially accessed

19  those computers, they did not violate the CFAA, because they had at least arguable authorization

20  from the account holder.  "Because Power had at least arguable permission to access Facebook's

21  computers, it did not initially access Facebook's computers 'without authorization' within the

22  meaning of the CFAA."  828 F.3d at 1077.

23    In short, in *Facebook*, following a similar line from *Nosal II*, the Ninth Circuit stated

24  that—even for "outsiders" like the *Power* defendants—revocation was the key fact upon which

25

26  _____

27  [2] It is true, as the government notes, that an opinion of a three-judge panel is not vacated until an en banc petition is granted.  But the point is that in the interim, prior to the issuance of the mandate and during the time when en banc petitions are pending, appellate opinions are interim

28  and not final.

7

1   liability turned.  And yet the government now denies that revocation has legal significance.

2   (Govt. Opp. at 15-16.).

3         Even more remarkably, the government contends that the knowledge requirement

4   suggested in *Nosal II* and *Facebook* was mere "dictum" that was "likely just the court's passing

5   characterization of the evidence."  (Govt. Opp. at 17.)  This is truly a stunning contention in

6   several respects.  First, the Ninth Circuit's discussion of the mens rea requirement was a critical

7   part of the holding in both cases.  Second, the Ninth Circuit has repeatedly warned that lower

8   courts should not evade the apparent holdings of appellate law by applying the loose "dicta"

9   label.  "[A] prior decision has binding effect to the extent that 'it is clear that a majority of the

10  panel has focused on the legal issue presented by the case before it and made a deliberate

11  decision to resolve the issue.'" *United States v. Cassel*, 408 F.3d 622, 633 n.9 (9th Cir. 2005)

12  (quoting *United States v. Johnson*, 256 F.3d 895, 916 (9th Cir. 2001) (en banc) (plurality op. of

13  Kozinski, J.)).

14        Third, as discussed in the Introduction above, the government itself has in other cases

15  conceded the mens rea requirement under *Nosal II* and *Facebook*.  In its opposition to en banc

16  rehearing in *Nosal II*, the government argued that it is precisely the knowledge requirement that

17  saves the statute from any vagueness problems and therefore obviates the need for en banc

18  review.  As the government put it, quoting *Facebook*, "the CFAA's 'without authorization'

19  offenses require proof that a person accessed a computer 'knowing that [she] was not authorized

20  to do so.'" (*United States v. Nosal*, Govt. Opposition to En Banc Petition at 14-15 (Oct. 11,

21  2016).)  And yet now in this case, the government argues that no such knowledge is required.

22        Knowledge of unauthorized status is required for liability.  The Information in this case

23  makes no allegation that the third parties in China who accessed Machine Zone computers knew

24  they had no authorization to do so.  To the contrary, the Information suggests that they were

25  granted permission by Mr. Zeng, a Machine Zone employee who had at least the apparent mantle

26  of authority to grant permission.  Machine Zone itself had not revoked or otherwise indicated

27  lack of permission.  There is no possible inference here, much less explicit allegation, that the

28

8

1  third parties knew they were acting without authorization.  The misdemeanor counts therefore

2  fail to state an offense.

3      **E.**    **Conclusion**

4      For the reasons stated above and in the memorandum supporting Mr. Zeng's motion**,** all

5  three charges against the defendant should be dismissed for failure to state an offense.

6

7  Dated: October 26, 2016           Respectfully submitted,

8  DENNIS P. RIORDAN
   DONALD M. HORGAN
   RIORDAN & HORGAN

9
10 THOMAS F. CARLUCCI
   JAIME DORENBAUM
   FOLEY & LARDNER LLP

11

12 /s/ Dennis P. Riordan
   DENNIS P. RIORDAN

13

14 Attorneys for Defendant
   JING ZENG

15

16

17

18

19

20

21

22

23

24

25

26

27

28